## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

C.H. Robinson Worldwide, Inc.,                    Civ. No. 19-1444 (MJD/BRT)

              Plaintiff,

v.                                                **REPORT AND**
                                                  **RECOMMENDATION**
Steven Tu and Everest Global Freight
Services, Inc.,

              Defendants.

---

      This matter is before the Court on Defendants' Motion to Dismiss or, alternatively, to Transfer. (Doc. No. 15.) The motion was referred for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.2. (Doc. No. 24.) This Court recommends Defendants' motion be denied for the reasons stated below.

## I.      Procedural Background

      Plaintiff C.H. Robinson Worldwide, Inc. ("C.H. Robinson") commenced this action in June 2019 against Defendants Steven Tu ("Tu") and Everest Global Freight Services, Inc. ("Everest"). (Doc. No. 1.) C.H. Robinson filed its First Amended Complaint on June 25, 2019. (Doc. No. 14, "Am. Compl.".) C.H. Robinson alleges that Tu, a former employee, and his company, Everest, have violated C.H. Robinson's contractual and legal rights. (Am. Compl. ¶ 1.) C.H. Robinson has asserted five claims: (1) Breach of Contract (against Tu); (2) Tortious Interference with Contractual Relationship (against Tu and Everest); (3) Inducing, Aiding, and Abetting Breaches

(against Tu and Everest); (4) Conspiracy (against Tu and Everest); and (5) Injunctive

Relief (against Tu and Everest). (Am. Compl. ¶¶ 88–122.) Before filing an answer,

Defendants moved to dismiss or transfer due to improper venue.

## II.    Factual Background

C.H. Robinson is a broker and service provider for all types of logistical and

transportation services, and sells, sources, and distributes various produce. (Am. Compl.

¶ 12.) C.H. Robinson's Global Forwarding Division has offices and employees around

the world to help customers meet global logistical goals. (Am. Compl. ¶ 13.) C.H.

Robinson hired Tu in 2013 as General Manager of the Global Forwarding Division in

New York. (Am. Compl. ¶¶ 18, 23.) On December 3, 2013, C.H. Robinson and Tu

entered into a Management-Employee Agreement governing the terms of the parties'

employment relationship and Tu's post-employment obligations to C.H. Robinson. (Am.

Compl. ¶ 34.)

The Management-Employee Agreement contained several restrictive covenants

concerning: noncompetition; competing business activity; nonsolicitation, non-hire, and

noninterference; indirect competition or solicitation; and confidential information. (Am.

Compl. Ex. 1, Doc. No. 14-1 at 5–6.) The Agreement also included a forum-selection

clause, providing:

> 11.01 <u>Governing Law and Venue Selection</u>. This Agreement is made under
> and shall be governed by and construed in accordance with the laws of the
> State of Minnesota without regard to conflicts of law principles thereof. The
> parties agree that any claim or dispute between them shall be adjudicated or
> arbitrated exclusively in the State of Minnesota, Hennepin County District
> Court, or the United States District Court for the District of Minnesota. Key

> Employee and Employer hereby consent to the personal jurisdiction of these courts and *waive any objection that such venue is inconvenient or improper.*

(Am. Compl. Ex. 1, Doc. No. 14-1 at 8–9) (emphasis added.) Tu received an annual bonus five times between 2014 and 2018, signing an Incentive Bonus Agreement on each occasion reaffirming his obligations under the Management-Employee Agreement as a condition of the bonus. (Am. Compl. ¶¶ 37–38.) C.H. Robinson and Tu also entered into various stock-option agreements obligating Tu to comply with the Management-Employee Agreement and other confidentiality and non-compete covenants. (Am. Compl. ¶¶ 39–41.)

Throughout his employment, Tu physically worked in New Jersey. (Decl. of Steven Tu ¶ 5, Doc. No. 18.) Tu traveled to Minnesota on several occasions for work. (Decl. of Matt. Castle ¶ 9, Doc. No. 27; Tu Decl. ¶ 12.) Tu entered into various employment agreements with C.H. Robinson obligating Tu to maintain C.H. Robinson's confidential information and refrain from interfering with C.H. Robinson's employee relationships, including employees working and residing in Minnesota. (Castle Decl. ¶ 6.) Those agreements, and Tu's compensation and benefits, were administered from Minnesota. (Castle Decl. ¶ 7.) Tu had other contacts with C.H. Robinson employees in Minnesota during his employment, including being supervised during parts of his employment by a person in Minnesota. (Castle Decl. ¶ 8.) And Tu connected to C.H. Robinson's electronic network in Minnesota on a near-daily basis. (Castle Decl. ¶ 10.) Tu asserts that these Minnesota contacts were minimal. (Tu Decl. ¶ 22.)

C.H. Robinson terminated Tu's employment in May 2018 "as part of a *bona fide* reduction in force." (Am. Compl. ¶ 50.) The parties entered into a Separation Agreement, in which Tu reaffirmed his continuing obligations to C.H. Robinson, including, without limitation, those in the Management-Employee Agreement. (Am. Compl. ¶ 55.)

In 2018, Tu started Everest in Edison, New Jersey and has been the "100% shareholder and President of Everest since its inception." (Tu. Decl. ¶ 21; Am. Compl. ¶ 58.) C.H. Robinson alleges that Everest obtained a license to operate as an ocean freight forwarder and therefore is a direct competitor with C.H. Robinson's Global Forwarding Division. (Am. Compl. ¶ 62.) C.H. Robinson also alleges that Tu solicited two former C.H. Robinson employees to work at Everest. (Am. Compl. ¶ 73.) Tu declares that "[s]ince the inception of Everest, [he has] had completely no connection with Minnesota whatsoever." (Tu Decl. ¶ 22.)

## III.    Dismissal for Improper Venue or Transfer

Defendants seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(3) and dismissal or transfer under 28 U.S.C. § 1406(a), arguing that venue is not proper under 28 U.S.C. § 1391. (Defs. Mem. at 2, Doc. No. 17.)

### A.    Standard of Review

In considering Defendants' Rule 12(b)(3) motion, the Court applies the same standard used for other motions to dismiss. *Transocean Grp. Holdings Pty Ltd. v. S. Dakota Soybean Processors, LLC*, 505 F. Supp. 2d 573, 575 (D. Minn. 2007) (citation omitted). The court "construe[s] all facts in the light most favorable to the non-moving party, and take[s] the facts alleged in the complaint as true." *Id.* (citation omitted). The

burden of proof is on the party claiming improper venue. *Id.* (citing *United States v. Orshek*, 164 F.2d 741, 842 (8th Cir. 1947)).[1] "To discharge that burden, the defendant must submit affidavits or other evidence defeating venue in the chosen forum." *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, Case No. 09-cv-720 (RHK/JJG), 2009 WL 1684428, at *2 (D. Minn. June 16, 2009) (citing *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003)). "Accordingly, unlike motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may consider matters beyond the pleadings when ruling on a motion to dismiss for improper venue." *Id.*

## B.    Venue is Proper

### 1.    Waiver

Defendants seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(3) and dismissal or transfer under 28 U.S.C. § 1406(a), arguing that venue is not proper under 28 U.S.C. § 1391. (Defs. Mem. at 2, Doc. No. 17.) Defendants move to dismiss pursuant to Rule 12(b) on the ground of improper venue; however, Defendant Tu expressly agreed to "waive any objection that such venue was inconvenient or improper." (Am. Compl. Ex. 1, Doc. No. 14-1 at 9.) Defendants contend that waiver of venue is

---

[1]    The parties spend a great deal of time arguing that the burden rests with Plaintiff to establish venue. In *Orshek*, 164 F.2d at 742, the Eighth Circuit held that the defendant bears the burden of establishing facts showing improper venue. After *Orshek*, the Eighth Circuit signaled in dicta (and without citing *Orshek*) that the plaintiff bears the burden of establishing facts to support his chosen venue. *See Cohen v. Newsweek, Inc.*, 312 F.2d 76, 78 (8th Cir. 1963). This Court finds, however, that *Orshek* controls, and therefore Defendants bear the burden of demonstrating that venue is not proper in this district. *See Cooper v Dep't of Army*, No. 4:13CV3086, 2013 WL 6631618, at *4 (D. Neb. Dec. 17, 2013). However, even if Plaintiff has the burden, it has satisfied it.

ineffective in light of the Supreme Court's decision in *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49 (2013). But *Atlantic Marine* concerned a venue challenge in the context of a defendant's challenge to a plaintiff's filing of a lawsuit in a forum other than the contractually pre-selected forum. Here, the facts are the opposite and involve Defendants' challenge to Plaintiff's choice to honor the parties' agreement by filing in a contractually pre-selected forum. Accordingly, notwithstanding the Supreme Court's statement in *Atlantic Marine* that the propriety of venue must be measured by reference to the venue factors set forth by statute, *id.* at 577 (citing 28 U.S.C. § 1391(b)), the Supreme Court did not confront a situation involving a selection of forum that was in accordance with the forum-selection clause and selected pursuant to Defendants' venue waiver. *See, e.g.*, *Nymbus, Inc. v. Sharp*, No. 3:17-cv-1113, 2018 WL 705003 (D. Conn. Feb. 5, 2018) ("*Atlantic Marine* and the statutory venue factors are inapplicable in light of plaintiff's reliance on a defendant's venue waiver.").

C.H. Robinson argues that the forum-selection clause in the Management-Employee Agreement should be enforced. (Doc. No 26, Pl. Mem. at 2). Defendants argue that the forum-selection clause has no bearing on whether venue is improper. (Doc. No. 45, at 3.) But the law they rely on—*Atlantic Marine* and the statutory venue factors—is inapplicable in light of plaintiff's reliance on a defendant's venue waiver. *See, e.g.*, *BMO Harris Bank, N.A. v. McM, Inc.*, No. 17-cv-335 (DWF/KMM), 2017 WL 3443238, at *3 (D. Minn. Aug. 8, 2017); *Servpro Indus., Inc. v. JP Penn Restoration Servs.*, No. 3-16-0298, 2016 WL 5109947, at *2–3 (M.D. Tenn. Sept. 20, 2016). To conclude otherwise would severely undermine the clearly articulated policy of the Supreme Court favoring

6

enforcement of forum selection classes "[i]n all but the most unusual cases." *Atl. Marine*, 571 U.S. at 66.

Defendants do not argue that the forum-selection clause is invalid or unenforceable; however, they argue that Defendant Everest is not a party to any agreement containing a forum-selection clause. (Defs. Mem. at 5–6.) A party need not have signed a contract to be bound by its forum-selection clause so long as two prerequisites are met: (1) the non-signatory must be "closely related" to the dispute; and (2) it must be foreseeable that it will be bound by the contract. *In re: RFC and ResCap Liquidating Trust Litigation*, No. 13-cv-3251 (SRN/HB), 2017 WL 1483374, at *11 (D. Minn. Apr. 25, 2017); *see also Marano Enters. of Kan. v. Z-Teca Rests.*, *LP*, 254 F.3d 753, 757 (8th Cir. 2001).

These two prerequisites are met in this case. Defendant Tu's employment agreement with C.H. Robinson and the subsequent conduct of Tu and his own company, Everest, give rise to this action. Tu formed the company, Everest, and has been the sole shareholder at all times since creation. (Tu Decl. ¶ 20–21.) Tu's company, Everest, hired C.H. Robinson's employees. Accordingly, Everest is closely related to this dispute such that it was foreseeable that it would be bound by the forum-selection clause in Tu's employment agreement with C.H. Robinson. *Cf. ARP Wave, LLC v. Salpeter*, 364 F. Supp. 3d 990, 995 (D. Minn. 2019) (finding company bound by forum-selection clause in an agreement that its founder signed despite not being a signatory to the agreement nor existing as an entity at the time it was signed).

7

In sum, Defendants' motion to dismiss should be denied because Defendant Tu waived any objection that such venue was improper

### 2.    Venue is Proper, Even Absent Contractual Waiver

Even if the contractual agreement does not operate as a waiver, venue in this District is proper. Absent contractual waiver, venue is generally governed by 28 U.S.C. § 1391(b). Under that statute, a civil action may be brought in:

> (1)    a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3)    if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* Venue is proper if the case falls into one of the three categories set out in § 1391(b). *Atl. Marine*, 571 U.S. at 56; *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("The statute does not posit a single appropriate district for venue; venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there."). The Court does not ask which district would be the *best* venue, rather, the question is whether the district the plaintiff chose had a substantial connection to the claim regardless of whether other forums had greater connections. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003).

The events giving rise to C.H. Robinson's claims are as follows: Tu was employed with C.H. Robinson, a Minnesota Company, for over four years. (Castle Decl. ¶ 4.) Tu

entered into various agreements with C.H. Robinson, obligating Tu to maintain C.H.

Robinson's confidential information and refrain from interfering with C.H. Robinson's

employee relationships, including employees working in Minnesota. (Castle Decl. ¶ 6.)

Those agreements, and Tu's compensation and benefits, were administered from

Minnesota. (Castle Decl. ¶ 7.) In addition, Tu traveled to Minnesota multiple times for

work and connected to C.H. Robinson's electronic network in Minnesota on a near-daily

basis. (Castle Decl. ¶¶ 9–10.) C.H. Robinson now claims that Tu has breached his

confidentiality and non-compete obligations. Tu's contractual relationship with C.H.

Robinson forms a necessary predicate for all of C.H. Robinson's claims against both Tu

and Everest. Accordingly, there is a substantial connection between this District and C.H.

Robinson's claims.

Relying on *Woodke*, Defendants argue that a court may only consider "wrongful

conduct" when determining whether a substantial connection exists, and that all of the

alleged wrongful conduct occurred in New Jersey. In *Woodke,* the Eighth Circuit found

insufficient events giving rise to the plaintiff's Lanham Act claim in Iowa, rejecting "Mr.

Woodke's argument that venue lies in the Northern District of Iowa simply because that

was where he was residing when the passing off occurred." *Woodke*, 70 F.3d at 985.

*Woodke* does not stand for the broad proposition that a court must ignore events that are

not "wrongful." *See Steen v. Murray*, 770 F.3d 698, 703 (8th Cir. 2014) ("We do not read

*Woodke* as holding that a court in applying § 1391(b)(2) may *only* consider the

defendant's allegedly wrongful activities. But the court's *focus* must be on relevant

activities of the defendant in the forum state, not on the effect of those activities on the

plaintiff in the forum state.") (emphasis in original). Even if the alleged conduct in Minnesota cannot be deemed wrongful in this case, these are "relevant activities" of the Defendants in Minnesota.

As explained in *Transocean Group*: "In *Woodke*, [] the Eighth Circuit addressed venue in the context of a Lanham Act claim, finding that the district in which defendant had manufactured the disputed products was not legally relevant to plaintiff's passing off claim for purposes of venue." 505 F. Supp. 2d at 576. The court went on to elaborate that, "while defendants' alleged conduct during the July 2006 meetings is not wrongful *per se*," the alleged conduct is "a necessary predicate to plaintiff's breach of contract claim . . . [and] the allegations are properly considered along with the defendants' alleged wrongful conduct in determining whether venue is proper in Minnesota." *Id.* This analysis regarding "relevant activity" was more recently confirmed in *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, where the court found venue proper because a substantial part of the events giving rise to the plaintiff's contractual claims occurred in Minnesota. 88 F. Supp. 3d 1034 (D. Minn. 2015). Specifically, the court explained, "since the basis of the parties' dispute arises from provisions in, and interpretation of, the contract, and the contractual offer occurred in Minnesota, then a substantial part of the events 'giving rise' to the contract, as well as the subsequent contractual claims, occurred in Minnesota." *Id.* at 1041.

Other courts in this District have reached the same conclusion in cases presenting a similar set of facts where an employer sued a former employee for breaching non-compete and confidentiality agreements that were executed in Minnesota, with a

Minnesota company, despite breaching said agreements while in another forum. *Cf.*

*Sightpath Medical, LLC v. Kohler*, No. 17-cv-180 (MJD/TNL), 2017 WL 1091940, at *5

(D. Minn. Mar. 3, 2017), *report and recommendation adopted by* 2017 WL 1082338 (D.

Minn. Mar. 22, 2017); *Federated Mut. Ins. Co. v. Bryan*, No. 17-cv-1136 (WMW/DTS),

2017 WL 7370057, at *2 (D. Minn. Nov. 28, 2017); *Commodities Specialists Co. v.

Brummet*, No. 02-cv-1459 (JRT/FLN), 2002 WL 31898166, at *6 (D. Minn. Dec. 27,

2002).[2] Even if the District of New Jersey were also a proper venue, the District of

Minnesota is not "a remote district having no real relationship to the dispute" between

C.H. Robinson and the Defendants. *See Woodke*, 70 F.3d at 985 (quoting *Cottman

Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)).

Defendants' motion to dismiss should be denied because a substantial part of the

events or omissions giving rise to the claim occurred in Minnesota, and venue is proper.

      3.    Transfer

Defendants argue that even if venue is proper under 28 U.S.C. § 1391, this Court

should transfer venue under 28 U.S.C. § 1404(a) for public interest considerations. (Defs.

Mem. at 2, 5.) That provision states that "[f]or the convenience of the parties and

witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought or to any district or division to

---

[2]     Defendants correctly note that the unpublished cases cited by Plaintiff are not
binding on this Court; however, the Court does not find—as Defendants contend—a
party's citation to unpublished cases authored by well-respected judges in this District
"alarming" as long as they are accurately presented consistent with the rules for motion
practice.

which all parties have consented." 28 U.S.C. § 1404(a). Typically, when there is no applicable forum-selection clause, a district court considering a § 1404(a) motion must evaluate both the convenience of the parties and various public-interest considerations. *Atl. Marine*, 571 U.S. at 62. When the parties' contract contains a valid forum-selection clause, however, a different analysis applies because the clause must be given "controlling weight in all but the most exceptional cases."[3] *Id.* at 63 (quotation omitted). In such a case, the court adjusts its analysis in three ways. *Id.*

First, the party resisting enforcement of the forum-selection clause has the burden to establish that the forum for which the parties bargained should be disregarded. *See id.* Second, the court does not consider competing arguments about the parties' private interests, rather, the court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. As a result, the court may consider only public-interest factors, which "rarely will defeat a transfer motion, [and] the practical result is that forum-selection clauses should control except in unusual cases." *Id.* Third, a party that "flouts its contractual obligation" under a forum-selection clause cannot invoke § 1404(a) "to gain the benefits of the laws of another jurisdiction." *Id.* (quotation omitted).

Defendants argue the following public-interest factors weigh in favor of transfer: (1) Tu intends to file a complaint in New Jersey alleging violations of New Jersey employment laws and, as such, there is a local interest in deciding the controversy there;

---

[3]     For the reasons stated above, this Court considers the forum-selection clause to be applicable to both Tu and Everest, despite Everest not being a signatory.

and (2) jury duty is an obligation that should not be imposed on the people of a community having no real relationship to the dispute. (Defs. Mem. at 6–7.) Tu ultimately filed suit on August 12, 2019, in the District of New Jersey asserting wage-and-hour claims. (Doc. No. 33-1, at 1.) Tu's New Jersey lawsuit was filed more than two months after C.H. Robinson initiated litigation in Minnesota, and more than one month after Defendants filed their motion to dismiss or transfer.

Generally, when two parallel cases are filed, the first court in which jurisdiction attaches has priority to consider the case. *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993). The first-to-file rule will be applied absent some compelling circumstances supporting its abrogation such as a knowledge of intent to file or a race to the courthouse. *Id.* at 1056–57. Here, there are no compelling circumstances supporting abrogation. C.H. Robinson's knowledge of Tu's intent to file—assuming for the sake of argument that there was such knowledge—or its racing to the courthouse are of no relevance when the parties contractually agreed to litigate the case in this District. "In all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." *Atl. Marine*, 571 U.S. at 66. This case does not present the extraordinary circumstances necessary to transfer in the face of a forum-selection clause. The Court therefore recommends Defendants' motion to transfer be denied.

## RECOMMENDATION

Based on the foregoing and the record, files, and proceedings herein, **IT IS HEREBY RECOMMENDED** that: Defendants' Motion to Dismiss, or alternatively, to Transfer, (Doc. No. 15), be **DENIED**.

Date: December 20, 2019                    *s/ Becky R. Thorson*
                                           BECKY R. THORSON
                                           U.S. Magistrate Judge

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgement of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).