UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

C.H. Robinson Worldwide, Inc.,

     Plaintiff,

v.

                                     **MEMORANDUM OPINION**
                                         **AND ORDER**
                         Civil No. 19-1444 (MJD/BRT)

Steven Tu and Everest Global
Freight Services,

     Defendant.

Joel O'Malley and Katie M. Connolly, Nilan Johnson Lewis P.A., Counsel for Plaintiff.

Heng Wang, Jordan Gottheim and Jacob Tebele, Wang, Gao & Associates, P.C. and Bradley J. Lindeman and Kathleen Li Reitz, Meagher & Geer, P.L.L.P, Counsel for Defendants.

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings.  [Doc. No. 59]

## I.    Background

C.H. Robinson is a broker and service provider for all types of logistical and transportation services, and sells, sources, and distributes various produce. (Am. Compl. ¶ 12.)  C.H. Robinson's Global Forwarding Division has offices and employees around the world to help customers meet global logistical goals.  (Id.

¶ 13.)  C.H. Robinson hired Tu in 2013 as General Manager of the Global

Forwarding Division in New York.  (Id. ¶¶ 18, 23.)  On December 3, 2013, the

parties entered into a Management-Employee Agreement governing the terms of

the parties' employment relationship and Tu's post-employment obligations to

C.H. Robinson.  (Id. ¶ 34.)

The Management-Employee Agreement contained several restrictive

covenants concerning noncompetition, competing business activity,

nonsolicitation, non-hire, and noninterference, indirect competition or

solicitation and confidential information.  (Id. Ex. 1 at 5–6.)  C.H. Robinson and

Tu also entered into various stock-option agreements obligating Tu to comply

with the Management-Employee Agreement and other confidentiality and non-

compete covenants.  (Id. ¶¶ 39–41.)

C.H. Robinson terminated Tu's employment in May 2018 "as part of a *bona

fide* reduction in force."  (Id. ¶ 50.)  The parties entered into a Separation

Agreement, in which Tu reaffirmed his continuing obligations to C.H. Robinson,

including, without limitation, those in the Management-Employee Agreement.

(Id. ¶ 55.)

In 2018, Tu started Everest in Edison, New Jersey and has been the "100%

shareholder and President of Everest since its inception." (Tu. Decl. ¶ 21; Am. Compl. ¶ 58.) C.H. Robinson alleges that Everest obtained a license to operate as an ocean freight forwarder and therefore is a direct competitor with C.H. Robinson's Global Forwarding Division. (Am. Compl. ¶ 62.) C.H. Robinson also alleges that Tu solicited two former C.H. Robinson employees to work at Everest. (Id. ¶ 73.)

C.H. Robinson further alleges that Tu created a Chinese entity named Everest Logistics based in Hong Kong. (Id. ¶ 65.) Tu is listed as President, and the company is a wholly owned subsidiary of RAS Holdings Limited, which lists Tu as one of three founding members and owner of 350,000 out of 2,000,000 shares. (Id. ¶ 66.) C.H. Robinson alleges that upon information and belief, its then-current Regional Director for South China, Raymond Sez, is also a founder of RAS Holdings. (Id. ¶ 69.) C.H. Robinson alleges that through Sez, Everest and Everest Holdings has the capability to route significant cargo to and/or from Sez's customer contacts. (Id. ¶ 70.)

Defendants argue they are entitled to judgment on the pleadings, and seek an order declaring the noncompete agreement at issue is unenforceable.

## II.    Standard for Motion for Judgment on the Pleadings

"Judgment on the pleadings is appropriate only where the moving party has clearly established that no material issue of fact remains and the moving party is entitled to judgment as a matter of law." Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001). When deciding a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the court must view the facts set forth in the complaint as true and granting all inferences in favor of the plaintiff. McIvor v. Credit Control Services, Inc., 773 F.3d 909, 912 (8th Cir. 2014). The same standard used to determine Rule 12(b)(6) motions is applied. Id. at 913. The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id.

Under Minnesota law, a non-compete agreement will be enforced only if it is reasonable.

> The test applied is whether or not the restraint is necessary for the protection of the business or good will of the employer, and if so, whether the stipulation has imposed upon the employee any greater restraint than is reasonably necessary to protect the employer's business, regard being had to the nature and character of the employment, the time for which the restriction is imposed, and the territorial extent of the locality to which the prohibition extends.

Bennett v. Storz Broad. Co., 134 N.W.2d 892, 899 (Minn. 1965).

"The validity of the [non-compete] in each case must be determined on its own facts and a reasonable balance must be maintained between the interests of the employer and the employee." Davies & Davies Agency, Inc. v. Davies, 298 N.W.2d 127, 131 (Minn. 1980).

Defendants argue the non-compete agreement at issue is overbroad and unreasonable in terms of its geographic restriction.  The non-compete provision provides that in exchange for his continued employment, including benefits under the company's stock plan, Tu agreed during the two years after the termination of his employment, that he "shall not . . . directly or indirectly, engage in any 'Competing Business Activity'  . . in any manner or capacity, including but not limited to as an advisor, principal, agent, consultant, partner officer, director, shareholder, employee or member of any association."  (Ex. 1, Section 7.01.)  Further, the agreement provides "the obligations of [Tu] under this Section 7 shall apply anywhere within the United States or any other country in which [Tu] has worked for Employer within the last twelve (12) months of employment with Employer."  (Id., Section 7.01(i).)  Defendants argue the non-compete agreement is entirely one-sided in favor of C.H. Robinson, and the geographic restriction is greater than necessary.

The validity of a non-compete agreement depends on a factual analysis that is generally not appropriate for a Rule 12(c) motion. See e.g., Bennett, 134 N.W.2d at 899-900 (on motion for summary judgment the court repeatedly stated the validity of a non-compete is dependent on the nature and extent of the business, and that the validity of the contract must be determined on its own facts); see also, Indus. Packaging Supplies, Inc. v. Davidson, No. CV 6:18-0651-TMC, 2018 WL 10456201, at *9 (D.S.C. June 22, 2018) (denying motion to dismiss breach of non-compete as overly broad on Rule 12(b)(6) motion); Base One Techs., Inc. v. Ali, 78 F. Supp. 3d 186, 194 (D.D.C. 2015) (noting that a determination of the enforceability of a non-compete upon a motion to dismiss will often be premature); Installed Bldg. Prods. LLC v. Cottrell, No. 13-cv-1112-A(Sc), 2014 WL 3729369, at *8 (W.D.N.Y. July 25, 2014) (finding there were a number of fact bound issues that would feed into the reasonableness of the non-compete agreement, therefore denying motion to dismiss).

Even if the Court were to consider the reasonableness of the non-compete agreement at this stage of the proceedings, viewing the facts in the light most favorable to C.H. Robinson and with all inferences in C.H. Robinson's favor,

Defendants have failed to clearly establish that no material issue of fact remains and they are entitled to judgment as a matter of law.

**IT IS HEREBY ORDERED** that Defendants' Motion for Judgment on the Pleadings [Doc. No.  59] is **DENIED.**

Date:  May 26, 2020

s/ Michael J. Davis
Michael J. Davis
United States District Court